Filed 6/16/23 Northgate Gonzalez v. Realm Real Estate CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

NORTHGATE GONZALEZ, LLC et al.,

Plaintiffs and Respondents,

v.

REALM REAL ESTATE, LLC et al.,

Defendants and Appellants.

E078106

(Super. Ct. No. CVRI2104149)

OPINION

APPEAL from the Superior Court of Riverside County. Chad W. Firetag, Judge. Dismissed.

Bridgeford Gleason & Artinian, Richard K. Bridgeford and John S. Gleason; Larson and Stephen G. Larson, Paul A. Rigali, Caroline G. Glennie-Smith and James M. McNamara, for Defendants and Appellants.

California Renter's Legal Advocacy and Education Fund and Dylan Casey; Yimby Law and Keith Diggs as Amici Curiae on behalf of Defendants and Appellants.

Stream Kim Hicks Wrage & Alfaro and Theodore K. Stream, Mario H. Alfaro and Andrea Rodriguez, for Plaintiffs and Respondents.

1

# I.

## INTRODUCTION

Magnolia Partnership, LLC and Realm Real Estate, LLC (Defendants) received approval from the City of Riverside (the City) to build a mixed-use project with commercial space and 450 apartments. Wilson Holdings, L.P., Los Altos XXVII, L.P., and Northgate Gonzalez, LLC (Plaintiffs) sued Defendants and sought an injunction to block construction of the project on the ground that it violated the parties' easement agreement. The trial court agreed, issued a preliminary injunction enjoining the project's construction, and ordered Plaintiffs to post a $10,000 bond. Defendants appealed the injunction and the bond order.

After we issued a tentative opinion but before we held oral argument, Defendants filed a request to dismiss the appeal. We exercise our discretion to dismiss the appeal without reaching the merits.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

Wilson Holdings and Los Altos own property in a shopping center in the City, which they currently lease to Northgate, which runs a supermarket on the property. The property is one of four contiguous parcels in the shopping center, one of which is owned by Magnolia.

2

All four parcels are subject to an easement agreement (the Easement Agreement).[1] The Easement Agreement, which was entered into by the previous owners of the Northgate and Magnolia parcels and the other two parcels in 1979, governs the use of the shopping center buildings and its parking lot.[2]

Its stated purpose is to "grant and establish reciprocal rights of ingress, egress, access and parking with respect to" the four parcels. In its prefatory recitals, the Easement Agreement explains that the four parcels it governs are "contiguous parcels of real property which the parties intend to use or are presently using for shopping center and commercial purposes" and that the parties entered into the Agreement "to grant and establish reciprocal rights of ingress, egress, access and parking with respect to the [p]arcels."

Under its second provision, titled "Parking Areas Defined," the Easement Agreement states that "the parties intend to develop or have developed [the parcels] as commercial and shopping center properties" and that the parcels "have been and will be improved with buildings which will be used for shopping center and commercial purposes." The provision goes on to explain that the portions of the parcels "not devoted to building uses are intended" and shall be used for, among other things, parking and "access, ingress and egress to and within the shopping center and commercial areas."

---

[1] The parties sometimes refer to the Easement Agreement as the "Four-Party Agreement" or the "FPA." We will refer to it as only the Easement Agreement.

[2] Magnolia does not dispute it is bound by the Easement Agreement.

3

The next provision, "Parking Areas Purposes Defined," similarly explains that "Parking Area Purposes" in the Easement Agreement means, among other things, "the mutual and reciprocal use of the Parking Areas for ingress and egress to and from public streets" and "for access, ingress and egress within the shopping center and commercial areas."

To that end, the Easement Agreement provides that the Parking Areas "shall be constructed, kept and maintained in a manner that allows the free and reasonable use of the easements granted" and that "there shall not be erected or maintained within [the Parking Areas] any building, fence, wall, grade change or other obstruction, which would unreasonably impede the free flow of traffic and use of the Parking Areas," except for "the buildings which the parties have constructed or anticipate constructing in connection with development of shopping center and commercial facilities on their respective parcels."

Wilson and Los Altos bought one of the shopping center parcels in 2018, and began a 20-year lease of their parcel in the shopping center to Northgate in June 2019. In January 2019, the parties began discussing Magnolia's plan to develop its parcel. Magnolia intended to build the Realm-designed "Magnolia Flats" project on its parcel, a "a mixed-use development consisting of a 450-unit multi-family residential building and two multi-tenant commercial buildings totaling 9,000 square feet," with other amenities. The "residential complex" would take up 13.31 acres while the "commercial component of the project" would cover 2.8 acres. Carports in the parking lot would narrow the aisles in the shared parking lot from 30 feet to 24 feet.

The City approved the project in July 2021, with construction set to begin within six to 12 months. Before construction began, however, Plaintiffs sued defendants for (1) breach of contract; (2) quiet title; (3) enforcement of easement; and (4) declaratory relief.

The thrust of Plaintiffs' lawsuit is that the Magnolia Flats project would violate the Easement Agreement in two ways. First, because the Magnolia Flats project would be predominantly an apartment complex, the Project was "residential" in violation of the Easement Agreement's terms that the parcels would be used for "shopping center" and "commercial" purposes. Second, the Magnolia Flats project would unreasonably interfere with Plaintiffs' access, ingress, egress, and parking rights under the Easement Agreement.

Along with their complaint, Plaintiffs moved ex parte for a temporary restraining order to enjoin construction of the Magnolia Flats project, which Defendants opposed. The trial court denied the motion and set the matter for a preliminary injunction hearing, and allowed Defendants to file supplemental opposition and Plaintiffs to file a reply.

Defendants opposed Plaintiffs' motion for a preliminary injunction on three main grounds: (1) the Easement Agreement does not restrict Magnolia from using its parcel for non-commercial, and even if it did, the Magnolia Flats project is "commercial" because its proposed apartment complex is "commercial" in that it would be income-producing, (2) Plaintiffs failed to exhaust their administrative remedies with the City because they did not oppose or appeal the City's approval of the Project, and (3) the project would comply with the Easement Agreement in that it would not interfere with

Plaintiffs' access, ingress, and egress rights. Defendants also argued they would be irreparably harmed if an injunction issued.

The trial court rejected Defendants' arguments. The court found that the Magnolia Flats project would violate the Easement Agreement in two ways: (1) the Project would be both "commercial" and "residential" even though the Easement Agreement "clearly sets forth" that Magnolia's parcel may be used only as a "commercial shopping area," and (2) the Project "would affect the parking for Plaintiffs' customers" and "both delivery trucks and customers will be impacted." The trial court therefore found that Plaintiffs were likely to succeed on the merits of their claims. The court then found that the balance of harm weighed in favor of issuing an injunction because Plaintiffs' "will be harmed by" the Magnolia Flats Project and their Easement Agreement rights would be violated, and allowing construction of the Project to begin would harm all parties if plaintiffs later prevailed on their claims.

The trial court therefore issued an injunction enjoining Defendants from beginning construction on the Magnolia Flats project and ordered Plaintiffs to post a $10,000 bond (see Code Civ. Proc., § 529) in October 2021. Days later, Defendants moved to increase the bond amount to about $5.5 million.

While that motion was pending, Defendants filed a Notice of Appeal, which indicates they appeal only the trial court's October 2021 "Order Granting Preliminary Injunction." A few weeks later, the trial court denied Defendants' motion to increase the bond amount and kept it at $10,000.

6

## III.

## REQUEST FOR DISMISSAL

An appellant may not dismiss an appeal as a matter of right. (*Huschke v. Slater* (2008) 168 Cal.App.4th 1153, 1160 [imposing $6,000 sanctions on attorney for unreasonable delay in notifying appellate court that parties had settled and dismissed the underlying case].) Rather, pursuant to California Rules of Court, rule 8.244(c)(2), "[o]n receipt of a request or stipulation to dismiss, the court *may* dismiss the appeal and direct immediate issuance of the remittitur." (Italics added.) Thus, dismissal is discretionary. We exercise our discretion and grant Defendants' request to dismiss the appeal.

## IV.

## DISPOSITION

Defendants' appeal is dismissed. Each party shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

McKINSTER
Acting P. J.

MILLER
J.